UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JEROME M.,[1]

    Plaintiff,

v.

ANDREW SAUL, COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

---

19-CV-289 (JLS)

### DECISION AND ORDER

On March 5, 2019, Plaintiff Jerome M. brought this action under the Social Security Act ("the Act"), seeking review of the determination by the Commissioner of Social Security ("the Commissioner") that he was not disabled. Dkt. 1. On November 7, 2019, Plaintiff moved for judgment on the pleadings. Dkt. 7. On January 24, 2020, the Commissioner responded and cross-moved for judgment on the pleadings. Dkt. 10. Plaintiff replied on February 13, 2020. Dkt. 12.

For the reasons stated below, this Court grants the Commissioner's motion and denies Plaintiff's motion.

---

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order entitled "In Re: The Identification of Non-Government Parties in Social Security Opinions," this Decision and Order identifies Plaintiff by first name and last initial.

## PROCEDURAL HISTORY

On October 8, 2015, Plaintiff applied for a period of disability and disability insurance benefits. Dkt. 7-1, at 2. Plaintiff claimed that he had been disabled since November 17, 2014, due to a lower back impairment stemming from a workplace injury. *See id.* at 2; Tr. at 17, 61-62.[2] On January 14, 2016, Plaintiff received notice that his application was denied because he was not disabled under the Act. Dkt. 7-1, at 2. He requested a hearing before an administrative law judge ("ALJ"), which occurred on February 6, 2018. *Id.* The ALJ issued a decision on April 4, 2018, confirming the finding that Plaintiff was not disabled. *See id.* Plaintiff appealed the ALJ's decision, and the Appeals Council affirmed the ALJ's decision. *Id.* Plaintiff then commenced this action.

## LEGAL STANDARD

### I. District Court Review

The scope of review of a disability determination involves two levels of inquiry. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). First, the Court must "decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* The Court's review for legal error ensures "that the

---

[2] The administrative transcript was filed as two separate documents. *See* Dkts. 4, 11. The earlier document is the original transcript of proceedings before the Social Security Administration. Dkt. 4. The later document contains requests to Dr. Bagnall for medical records, which "were not available when the administrative record in the case of [Plaintiff] was certified on March 31, 2019." Dkt. 11, at 1. The administrative transcript's pagination continues from the original document to the supplemental document. Thus, all references to Dkt. 4 and Dkt. 11 are denoted "Tr. __."

2

claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes" of the Social Security Act. *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (*quoting Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Second, the Court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citations omitted). The Court does not "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotations and citations omitted). But "the deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). Indeed, if "a reasonable basis for doubt whether the ALJ applied correct legal principles" exists, applying the substantial evidence standard to uphold a finding that the claimant was not disabled "creates an unacceptable risk that a claimant will be deprived of the right to have his disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## II. <u>Disability Determination</u>

ALJs follow a five-step evaluation process to determine if a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1). At the first step, the ALJ determines whether the claimant currently is engaged in substantial gainful employment.

*Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. *Id.* § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant suffers from any severe impairments. *Id.* § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. *Id.* § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or combination of impairments meets or equals an impairment listed in the regulations. *Id.* § 404.1520(a)(4)(iii). If the claimant's severe impairment or combination of impairments meets or equals an impairment listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that no severe impairment or combination of impairments meets or equals any in the regulations, the ALJ proceeds to step four. *Id.* § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See id.* § 404.1520(a)(4)(iv), (d)-(e). The RFC is a holistic assessment of the claimant that addresses the claimant's medical impairments—both severe and non-severe—and evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for his collective impairments. *See id.* § 404.1520(e); *id.* § 404.1545. After determining the claimant's RFC, the ALJ completes step four. *Id.* § 404.1520(e). If the claimant can perform past relevant work, he is not disabled

and the analysis ends. *Id.* § 404.1520(f). But if the claimant cannot perform past relevant work, the ALJ proceeds to step five. *Id.* § 404.1520(a)(4)(iv), (f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See id.* §§ 404.1520(a)(4)(v), (g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Specifically, the Commissioner must prove that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)).

## DISCUSSION

### I. ALJ Decision

The ALJ proceeded through the five-step evaluation in Plaintiff's case. At step one, the ALJ found that, although Plaintiff had engaged in substantial gainful activity from May 2016 through the date of the ALJ's decision on April 4, 2018, Plaintiff did not engage in substantial gainful activity for a continuous twelve-month period, beginning November 2014. Tr. 12, 15. At step two, the ALJ found that Plaintiff has discogenic disease of the lumbar spine, which constitutes a severe impairment. *Id.* at 15. At step three, the ALJ found that Plaintiff does "not have an impairment or combination of impairments that met or medically equaled" any of the impairments listed in the regulations. Tr. 16. At step four, the ALJ determined that Plaintiff retains the RFC to perform light work with certain

exceptions—specifically, that Plaintiff can "only occasionally climb ramps or stairs but never climb ladders, ropes or scaffolds," and that he can "occasionally balance, stoop, kneel, crouch, bend at the waist or crawl." Tr. 17. Completing step four, the ALJ determined Plaintiff's RFC and found that Plaintiff has no past relevant work. Tr. 22. At step five, relying on the testimony of a vocational expert and considering Plaintiff's RFC, age, education, and work experience, the ALJ concluded that Plaintiff can perform certain jobs that exist in significant numbers in the national economy. *Id.* These occupations include a sales attendant, "Cashier II," and ticket seller. Tr. 23. Accordingly, the ALJ determined that Plaintiff was not disabled, as defined in the Act, from the alleged onset date of November 17, 2014 through the date of the decision. *Id.*

## II. The ALJ properly developed the record.

Plaintiff argues that remand is necessary because the ALJ failed to fully develop the record. Specifically, Plaintiff alleges two gaps in the administrative record that should have prompted the ALJ to further develop the record. Dkt. 7-1, at 6, 9. First, the ALJ failed to obtain records from Millard Fillmore Suburban Hospital.[3] *Id.* at 6-8. Second, the ALJ failed to obtain the records of Dr. Bagnall. *Id.* at 8-9. The Court addresses each argument in turn, and concludes that neither has merit.

By way of background, an ALJ's "affirmative obligation to develop the administrative record" is well-established. *See, e.g., Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 108 (2d Cir. 2020) (summary order) (citing *Perez v. Chater*, 77

---

[3] The Agency had requested records from Millard Fillmore *Gates* Hospital, but did not receive any because that hospital has "been [closed] for several years." Tr. 364.

6

F.3d 41, 47 (2d Cir. 1996)); *see also* 42 U.S.C. § 423(d)(5)(B). The ALJ must "develop a complete medical history of at least the preceding twelve months for any case" in which disability is not found, and also must "make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence." *See* 42 U.S.C. § 423(d)(5)(B).

The Social Security regulations address both "[the claimant's] Responsibility" and "[the ALJ's] Responsibility." *See* 20 C.F.R. §§ 404.1512(a), (b). The claimant must prove disability. *Id.* § 404.1512(a)(1). And the ALJ must "make every reasonable effort to help [the claimant] get medical evidence from [claimant's] own medical sources and entities that maintain [claimant's] medical sources' evidence" when permission is given. *See id.* § 404.1512(b)(1). "[E]very reasonable effort" means that an ALJ will make "an initial request for evidence from [a plaintiff's] medical source or entity that maintains [the] medical source's evidence, and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, [the ALJ] will make one follow-up request to obtain the medical evidence necessary to make a determination." *Id.* § 404.1512(b)(1)(i). The duty exists "even when the claimant is represented by counsel or by a paralegal." *Rosa*, 168 F.3d at 79 (quoting *Perez*, 77 F.3d at 47).

Despite this affirmative duty, the ALJ's obligation is not unlimited. *See Jordan v. Comm'r of Soc. Sec.*, 142 F. App'x 542, 543 (2d Cir. 2005) (summary order) (duty fulfilled where the ALJ kept the record open to allow the plaintiff to secure medical records, where the plaintiff did not request assistance obtaining such

7

records, and where the plaintiff ultimately told the ALJ there was "nothing further to add" to the record); *Martin v. Saul*, 18-CV-1478-HKS, 2020 WL 5096057, at *4 (W.D.N.Y. Aug. 28, 2020) (duty fulfilled where the ALJ kept the record open for approximately three weeks after the hearing); *Pinkowski v. Comm'r of Soc. Sec.*, 1:19-CV-00173 EAW, 2020 WL 1969312, at *5 (W.D.N.Y. Apr. 24, 2020) (duty fulfilled where the ALJ kept the record open for an additional thirty days and where the plaintiff acknowledged there was nothing further to add to the record). In addition, a plaintiff cannot use arguable gaps as a *per se* basis for remand. *See Pinkowski*, 2020 WL 1969312, at *5. Rather where "it is apparent from the face of the record that the record lacks necessary information," the ALJ has an affirmative obligation to develop the record. *See Rodriguez v. Colvin*, No. 14–CV–214S, 2015 WL 5037014, at *3-4 (W.D.N.Y. Aug. 25, 2015) (citation omitted); *see also Rosa*, 168 F.3d at 79 ("Where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history").

To determine whether the ALJ satisfied the affirmative duty to develop the record, the Court must assess "(1) whether there was an obvious gap in the record that should have prompted the ALJ to seek additional information; and (2) whether the ALJ fulfilled [her] duty by making every reasonable effort to fill that gap." *See Pinkowski*, 2020 WL 1969312, at *5 (quoting *Dougherty-Noteboom v. Berryhill*, No. 17-CV-00243-HBS, 2018 WL 3866671, at *8 (W.D.N.Y. Aug. 15, 2018)); *see also Rosa*, 168 F.3d at 79 n.5; *Lowry v. Astrue*, 474 F. App'x. 801, 804 (2d Cir. 2012) (summary order).

8

Plaintiff argues that the ALJ failed to develop the record with treatment information she knew was missing, requiring remand. Dkt. 7-1, at 6-9. On January 28, 2018, Plaintiff informed the ALJ of pending requests for records from Millard Fillmore Suburban Hospital, Mavis Discount Tires, and Walmart. *See* Tr. 219-20; *see also* Tr. 12. During the February 6, 2018 hearing, the ALJ and Plaintiff's attorney had the following exchange pertaining to the records from Millard Fillmore Suburban Hospital:

> ALJ: The [Social Security] Agency was put on notice of outstanding medical evidence from Millard Fillmore Suburban Hospital, Mavis Discount Tires, and Walmart. . . Do the Millard records have anything to do with this closed period?
> ATTY: Yes.
> ALJ: They do?
> ATTY: They do.
> ALJ: Okay. Then I will leave the record open for one week for receipt of records from Millard, Mavis, and/or Walmart.
> ATTY: Thank you.
> ALJ: Close of business one week from today, I will either have those records or I will have a request for an extension of time with good cause shown. If I don't have either, the record will close, and I will make a decision based upon the evidence that has been received to that point.

Tr. 32-33. At the conclusion of the hearing, the ALJ reiterated that the record would close in one week, unless the ALJ received the records or a request for an extension of time with good cause. Tr. 59.

On February 11, 2018, Plaintiff requested "to keep the . . . record open for an additional two weeks" to accommodate "employment records from Mavis Discount Tires and Walmart." Tr. 221. The ALJ granted the request. Tr. 12. Despite this extension, Plaintiff did not submit records from Millard Fillmore Suburban

9

Hospital. *Id.* Nor did the ALJ receive another request for an extension of time. *Id.* Accordingly, the ALJ closed the record and proceeded to make a decision. *Id.*

### A. Millard Fillmore Suburban Hospital Records

Plaintiff asserts that the ALJ failed to obtain the records from Millard Fillmore Suburban Hospital, creating an obvious gap in the record. Dkt. 7-1, at 6-9. The Court disagrees. Courts have found an obvious gap where "it is apparent from the face of the record that the record lacks necessary information." *See, e.g., Rodriguez*, 2015 WL 5037014, at *3-4. Indeed, an obvious gap in the record should prompt the ALJ to seek additional information—*i.e.*, to develop the record. *See Pinkowski*, 2020 WL 1969312, at *5 (citation omitted).

In analyzing Plaintiff's disability status, the ALJ obtained information from multiple healthcare providers, testimony from Plaintiff on his daily activities, and four medical opinions. *See* Tr. 21-22. The ALJ's decision did not identify a gap. *See id.* Nor does Plaintiff identify an obvious gap created by failure to obtain these records.

Nothing in the record—including the hearing transcript—indicates what treatments occurred at Millard Fillmore Suburban Hospital, the exact dates that any treatment notes would apply to, or how the records could prove Plaintiff's disability. It is not "apparent from the face of the record that the record lacks necessary information." *See Rodriguez*, 2015 WL 5037014, at *3-4; *compare Morris v. Berryhill*, 721 F. App'x 25, 27-28 (2d Cir. 2018) (summary order) (explaining that a "theoretical possibility" of missing records "does not establish that the ALJ failed to develop a complete record" where no evidence of missing records existed and the

10

plaintiff provided no information about their contents), *with Sotososa v. Colvin*, 15-CV-854-FPG, 2016 WL 6517788, at *3 (W.D.N.Y. Nov. 3, 2016) (concluding that an obvious gap existed where the ALJ's decision and claimant testimony referenced regular counseling sessions and treatment notes, which were not in the record).

In addition, Plaintiff's submissions to this Court fail to identify what necessary information the Millard Fillmore Suburban Hospital records would supply. *See* Dkt. 7-1, at 6-9; Dkt. 12, at 1-4. Thus, the Court concludes that the ALJ's decision, made without the Millard Fillmore Suburban Hospital records, is not a *per se* basis for remand; the record does not contain an obvious gap. *See Pinkowski*, 2020 WL 1969312, at *5.

Even assuming that the absence of any Millard Fillmore Suburban records created an obvious gap in the administrative record, the ALJ fulfilled the duty to develop the record. The ALJ acted reasonably by keeping the record open for three additional weeks at the request of Plaintiff, who was obtaining the records. Tr. 12, 221. During the administrative hearing on February 6, 2018, the ALJ notified Plaintiff that she would make a decision on the existing record—unless the ALJ received another request for an extension of time. *See* Tr. 33, 59. In the final request for an extension of time on February 11, 2018, Plaintiff again asked that the record remain open so that he could secure employment records. Tr. 221. He did not reference any hospital records from Millard Fillmore Suburban Hospital. *Id.* Subsequently, Plaintiff only submitted employment records to the ALJ. *See* Tr.

11

222-342. After three weeks, without another additional request for an extension of time, the ALJ closed the record. *See* Tr. 12.

Based on all of this, the Court concludes that the ALJ could have presumed a complete administrative record.[4] *See Gore v. Comm'r of Soc. Sec.*, 1:18-CV-1516 (WBC), 2020 WL 1877709, at *7 (W.D.N.Y. Apr. 15, 2020) (concluding the ALJ could presume a complete record after keeping it open for three months); *Metzinger v. Comm'r of Soc. Sec.*, 1:18-CV-1465 (WBC), 2019 WL 7194480, at *4 (W.D.N.Y. Dec. 26, 2019) (same); *Myers ex rel. C.N. v. Astrue*, 993 F. Supp. 2d 156, 163 (N.D.N.Y. 2012) (ALJ fulfilled duty where the plaintiff failed to produce specific evidence after a three-week extension and without requesting additional time or the issuance of a subpoena; other evidence was received after the hearing that "could have led the ALJ reasonably to conclude that no further records were available or forthcoming"). The ALJ "need not canvas every medical provider while [Plaintiff] offers little or no guidance as to whether the medical records are relevant." *Gore*, 2020 WL 1877709, at *7 (citation omitted).

If Plaintiff anticipated submitting any records from Millard Fillmore Suburban Hospital, he could have requested another extension for good cause. The Millard Fillmore Suburban Hospital records were not submitted to the administrative record on appeal within the Social Security Agency. Nor were they

---

[4] In addition, Plaintiff did not ask the ALJ for assistance in obtaining any records. *See Jordan*, 142 F. App'x at 543; *see also* 20 C.F.R. § 404.1512(b)(1)(i). To the contrary, Plaintiff stated that he requested records from Millard Fillmore Suburban Hospital, Mavis Discount Tires, and Walmart, and that Plaintiff would "continue to pursue the records." Tr. 219.

12

provided here. Plaintiff fails to identify how these medical records bear on whether Plaintiff is disabled. The "mere absence" of the Millard Fillmore Suburban Hospital records, without more, does not show the ALJ failed to fulfill the duty to develop the record. *See Pinkowski*, 2020 WL 1969312, at *5. Remand, on this basis, is not required.

## B. <u>Dr. Bagnall's Records</u>

Plaintiff also argues that the absence of records from Dr. Bagnall created an obvious gap that required the ALJ to further develop the record. Dkt. 7-1, at 8. The Court disagrees.

First, the Court concludes that no such gap existed. Outside of requests from the Agency, the record scarcely mentions Dr. Bagnall.[5] Furthermore, in Plaintiff's requests for additional time and at the ALJ's hearing, he made no mention of outstanding records from Dr. Bagnall. *See* Tr. 30-60, 219, 221. It is not "apparent from the face of the record" that Dr. Bagnall's records were necessary to evaluate Plaintiff's disability status.[6] *See Rodriguez*, 2015 WL 5037014, at *3-4.

Nonetheless, assuming a gap existed with respect to the records of Dr. Bagnall, the Court concludes that the ALJ fulfilled her affirmative duty to develop

---

[5] It appears that the record, in its entirety, identifies Dr. Bagnall only twice besides the Agency requests for treatment records. Emergency room documents reference a call to Dr. Bagnall (Tr. 346) and state that "[Plaintiff] has seen Dr. Bagnall" (Tr. 352).

[6] The Court has considered Plaintiff's argument that the Commissioner's "tactic" of supplementing the record with the Agency's requests to Dr. Bagnall for medical records (Dkt. 11) violates 42 U.S.C. § 405(g) ("As part of the Commissioner's answer the Commissioner of Social Security shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based."). *See* Dkt. 12, at 3. The Court is not persuaded by this argument, and

13

the record. The Agency requested Dr. Bagnall's treatment records on October 23, 2015, and followed up on that request on November 2, 2015. Tr. 64, 417-423. The Agency therefore fulfilled the requirement, pursuant to 20 C.F.R. § 404.1512(b)(1)(i), to "make every reasonable effort to help get medical evidence." *See id.*

### III. The ALJ was not required to recontact Dr. Gosy and Dr. Dave.

Plaintiff's next argument relates to Dr. Gosy and Dr. Dave,[7] two pain management specialists. Tr. 21, 353; Dkt. 7-1, at 9-10. Both doctors opined that Plaintiff had a fifty percent temporary impairment. Tr. 353-54, 357-58, 361, 384. The ALJ assigned little weight to these assessments because the doctors assessed Plaintiff's disability under the Workers' Compensation standard, instead of the Social Security standard. Tr. 21-22. Plaintiff does not contest the ALJ's assignment of "little weight" to these doctors' assessments. Rather, Plaintiff asserts

---

has reviewed all submissions from the Commissioner. *See Cross v. Astrue*, No. 08-CV-0862, 2010 WL 2399379, at *3 (N.D.N.Y. May 24, 2010) (denying Plaintiff's motion to strike supplemental transcript, containing failed request to obtain medical records, because striking "any portion of the record upon which the agency relied would only frustrate the Court's duty to review 'the whole record'"), *report and recommendation adopted*, No. 08-CV-862, 2010 WL 2399346 (N.D.N.Y. June 10, 2010).

[7] Although the ALJ's decision does not reference Dr. Dave explicitly, Plaintiff argues the ALJ should have recontacted him, and Dr. Gosy, to further develop the record. *See* Dkt. 7-1, at 9-10.

that the discrepancy between the standards required the ALJ to recontact the doctors to clarify their medical opinions. Dkt. 7-1, at 9-10. The Court disagrees.

The ALJ's duty to recontact a medical source is discretionary. *See, e.g., Walton v. Comm'r of Soc. Sec.*, 6:18-CV-6140, 2020 WL 3964255, at *4 (W.D.N.Y. July 13, 2020) (citing *Lowry v. Astrue*, 474 F. App'x 801, 805 n.2 (2d Cir. 2012) (summary order)). An ALJ may recontact the claimant's medical source to obtain additional evidence. *See* 20 C.F.R. § 404.1520b(b)(2)(i). An ALJ's duty to recontact a treating source "arises only if the ALJ lacks sufficient evidence in the record to evaluate the doctor's findings, not when the treating physician's opinion is inconsistent with her own prior opinions and the rest of the record." *Morris*, 721 F. App'x. at 28 (citations omitted).

The ALJ did not lack sufficient evidence to evaluate Dr. Gosy and Dr. Dave's findings, and therefore did not need to recontact them. The ALJ discussed their treatment notes extensively in her decision. Tr. 19-22. For example, the ALJ evaluated medical opinions concerning Plaintiff's unremarkable electromyography-nerve conduction study from February 2015, musculoskeletal examinations (showing, among other notations, "normal strength of lower extremities with no neurological deficits"), and physical examinations (revealing unassisted walking with normal gait). *Id.* The ALJ's determination was consistent with clinical findings of record showing no neurological or strength deficits as well as Plaintiff's testimony of daily activities. Tr. 18-22. Additionally, the ALJ acknowledged Plaintiff's limitations and determined "the extent to which these limitations" eroded

15

Plaintiff's ability to work using the assistance of a vocational expert. *See* Tr. 23. Thus, the ALJ had sufficient evidence to evaluate and assign weight to Dr. Gosy and Dr. Dave's opinions. Remand is not necessary on this basis.

## IV. Dr. Liu's opinion was not too vague to form a basis for the RFC.

Plaintiff's final contention is that Dr. Liu's opinion is too vague to form the basis for Plaintiff's RFC. Dkt. 7-1, at 11. This argument also fails.

The Second Circuit held that, absent additional information, a single, vague medical opinion of mild and moderate limitations was insufficient to form the basis for an RFC. *See Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000), *superseded by statute on other grounds, as recognized in Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012) (summary order). *But see Lewis v. Colvin*, 548 F. App'x 675, 677-78 (2d Cir. 2013) (summary order) (concluding "mild limitations for prolonged sitting, standing, and walking," further supported by evidence in the record, is substantial evidence for ALJ's determination of no disability).

Dr. Liu completed a comprehensive physical examination, concluding that Plaintiff "has mild to moderate limitation for prolonged walking, bending, [and] kneeling." Tr. 374. Dr. Liu noted Plaintiff's reduced lumbar spine flexion and extension. Tr. 373. But Dr. Liu also found that Plaintiff had normal gait, the ability to walk on his heels and toes with mild difficulty, the ability to squat at fifty percent, and positive findings on straight leg raise and full range of motion on upper and lower extremities. *See* Tr. 373-74. Furthermore, Plaintiff's daily activities supported Dr. Liu's assessment of mild and moderate limitations and the ALJ's conclusion that Plaintiff is not disabled. *See* Tr. 20, 22, 372. Dr. Liu's assessment,

as a whole, constituted substantial evidence to support the ALJ's decision. *See Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (summary order) (concluding substantial evidence supported the ALJ's decision, despite "some limitations in [plaintiff's] range of motion"). Dr. Liu's opinion was not too vague to form a basis for Plaintiff's RFC. *See Lewis*, 548 F. App'x at 678.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 7) is DENIED, and the Commissioner's cross motion for judgment on the pleadings (Dkt. 10) is GRANTED. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

Dated:   December 15, 2020
         Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE